# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| **IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION** | **MDL 2804** |
| **This document relates to:** | **Case No. 1:17-md-2804-DAP** |
| | **Honorable Dan Aaron Polster** |

*Town of Chapmanville v. West Virginia Board of Pharmacy, et al.,*
Case No.1:17-op-45055

*The City of Williamson v. West Virginia Board of Pharmacy, et al.,*
Case No.1:17-op-45057

*Town of Kermit v. West Virginia Board of Pharmacy, et. al.,*

**PLAINTIFFS' SUPPLEMENTAL, REPLY BRIEF ON THEIR MOTION TO REMAND**

Case No. 1:17-op-45058

*Town of Gilbert v. West Virginia Board of Pharmacy, et. al.,*
Case No. 1:17-op-45059

*The County Commission of Lincoln County v. West Virginia Board of Pharmacy, et. al.,*
Case No. 1:17-op-45060

*The County Commission of Mercer County v. West Virginia Board of Pharmacy, et. al.,*
Case No.1:17-op-45061

*City of Welch v. West Virginia Board of Pharmacy, et. al.,*
Case No. 1:17-op-45065

1

# Table of Contents

I.   PROCEDURAL HISTORY ................................................................................................. 3

II.   REVIEW STANDARDS ................................................................................................. 5

III.   THIS COURT SHOULD ACCEPT PLAINTIFFS MARCH 2019 AMENDED COMPLAINT BECAUSE NO PREJUDICE HAS OCCURRED WHERE THIS CASE HAS BEEN STAYED FOR FIVE YEARS WITH A PENDING MOTION TO CONSIDER REMAND THAT IS ONLY NOW UNDER REVIEW ................................................................................................................ 8

IV.   THIS COURT SHOULD ACCEPT PLAINTIFFS MARCH 2019 AMENDED COMPLAINT BECAUSE THE BASIS FOR DISTRIBUTOR DEFENDANTS' REMOVAL HAS BEEN MOOTED BY PREVIOUS COMPANION CASES ............................................................................................. 13

V.   FRAUDULENT MISJOINDER DOES NOT APPLY HERE WHERE PLAINTIFFS HAVE A CAUSE OF ACTION UNDER WEST VIRGINIA LAW AGAINST JOINT TORTFEASORS, INCLUDING THE BOP, NOR DEFENDANT PURDUE SALESPERSONS. ........................................ 15

VI.   FRAUDULENT JOINDER DOES NOT APPLY TO THE BOP WHERE DEFENDANTS CAN SHOW NO CLEAR ESTABLISHED PRECEDENT IN WEST VIRGINIA ON WHETHER QUALIFIED IMMUNITY OR THE PUBLIC DUTY DOCTRINE SHIELD THE BOP FROM EITHER NEGLIGENCE OR NUISANCE CLAIMS. ........................................................................................ 17

RELIEF REQUESTED .......................................................................................................... 21

## I.    PROCEDURAL HISTORY

Seven municipalities ("Plaintiffs") filed the above captioned separate suits in West Virginia circuit courts in 2017, because opioids flooding into their communities had left behind a wake of addiction, premature death, and spill-over violent crime. Opioids had become public nuisance number one. Plaintiffs sought redress with those who had been entrusted to regulate, distribute, dispense, or prescribe controlled substances.[1]  In their Complaints, Plaintiffs contended Defendant West Virginia Board of Pharmacy ("BOP"), while statutorily responsible for licensing Distributor Defendants, failed to ensure effective controls and procedures to guard against theft and diversion of controlled substances. Plaintiffs further contended four multi-national pharmaceutical distributor companies ("Distributor Defendants") were legally obligated to investigate suspicious drug orders. Armed with sophisticated data tracking software, Distributor Defendants knew they were saturating Plaintiffs' communities with millions of addictive opioid pills.  Instead of curtailing shipments, however, Distributor Defendants actually increased sales.[2] Four of the seven complaints named individual defendant pharmacists and doctors for recklessly or negligently prescribing or filling opioid prescriptions among the community.[3]  Plaintiffs averred Distributor Defendants, defendant pharmacists and doctors, as well as the BOP acted as

---

[1] *See*, e.g., Complaint in C*ty. Comm'n of Lincoln County v. West Virginia Bd. of Pharmacy,* 17-C-46 (Cir. Ct. Lincoln Ct., May 18, 2017) *attached* as Exhibit A to C*ty. Comm'n of Lincoln County v. West Virginia Bd. of Pharmacy*, 2:17-cv-0336 (June 22, 2017), ECF 1. For ease of reference, like Distributor Defendants' Brief, references are made to an example brief rather than all seven. Where slight differences exist, they are described.

[2] Distributor Defendants include: McKesson Corporation, Amerisource Bergen Drug Corporation, Cardinal Health 110, LLC, and Miami-Luken.

[3] Each municipality identified slightly different individual doctors and pharmacists. The City of Welch and Mercer County named as original defendants to their first Complaint Dr. Cofer, while the Town of Kermit named Dr. Cameron Justice – owner of a medical clinic "Justice Medical Clinic," (¶36 Compl. 17-C-3 in Circuit Ct, Mingo Cty, filed (May 18, 2017), attached as Exhibit A to Kermit v. West Virginia Bd, 2:17-cv-0337s and Lincoln County named City Center Pharmacy with trade name "Chip RX, LLC" and George W. "Chip" Chapman, III as the owner, operator, and pharmacist in charge. Mr. Chapman was arrested on charges related to prescription pill fraud and voluntarily surrendered his pharmacy license on or about January 20, 2017. Lincoln County, Complaint 17-C-46 (May 18, 2017) appended to *Lincoln County* 2:17-cv-0336, (June 22, 2017), ECF 1-1 ¶ 36.

joint tortfeasors to not merely create, but profit from, a devastating, multi-generational health crisis – its youngest victims born suffering pangs of opioid withdrawal.

Distributor Defendants – then the only diverse parties to the instant lawsuit– filed Notice of Removal to the Southern District of West Virginia citing complete diversity between Plaintiff and all properly joined defendants. *See, e.g.*, *Lincoln*, *supra*, 2:17-cv-0336 (Notice of Removal, June 22, 2017) at ¶ 8. Plaintiffs moved for remand on July 14, 2017.[4] Although all parties briefed the Southern District of West Virginia on jurisdiction and oral arguments were heard by the court, no ruling had issued when the instant Opiate Multi-District Litigation (MDL 2804) was formed. Because the West Virginia Supreme Court of Appeals has an established Opioid Litigation Mass Litigation Panel (MLP) containing over 65 lawsuits with nearly identical claims brought against these defendants,[5] Plaintiffs' oppose inclusion in the MDL in favor of remand. *See In re National Prescription Opiate Litigation,* 1:17-MD-2804 (Transcript of Teleconference Proceedings, December 13, 2017), pp. 16, 22, ECF 10. Plaintiffs' lawsuits were designated as tag-alongs to the MDL and transferred without a ruling on removal.

By Order dated January 18, 2019, in the instant lawsuit, all Non-Track One and Motion Plaintiffs – a category to which Plaintiffs belong -- were granted an extension until March 16, 2019 to amend their pleadings as of right for matters both relying on and beyond the ARCOS data. (ECF 1282, p. 2) Plaintiffs so amended all seven complaints on March 15, 2019, with one day to spare.  Plaintiffs' Amended Complaints were parallel to one another in all claims and Defendants. Each complaint added Defendant opioid manufacturers – diverse parties – and certain local drug salespersons – nondiverse.  On April 26, 2022, this Court cautioned opposing parties

---

[4] See, e.g. *Town of Kermit v. West Virginia Bd. of Pharm.*, 2:17-cv-03372 (Notice of Removal, June 22, 2017) and *Kermit, supra,* (Motion to Remand, July 24, 2017), EC 15.
[5] *In Re Opioid Litigation*, Civil Action, No. 19-C-90000, Kanawha County, West Virginia.

who had filed motions previously requesting removal not engage to in frivolous arguments in light of this Court's previous orders. Almost the entirety of Distributor Defendants' brief is based on arguments relating to the earlier, 2017 brief – one superseded by the properly filed 2019 Complaint. Distributor Defendants mistakenly believe they have grounds to challenge the 2019 Amended Complaints. As will be addressed, Distributor Defendants' brief also reiterate numerous claims asserting Defendant BOP has qualified immunity even in light of an existing state order finding no such immunity.

Other defendants to Plaintiffs' Amended Complaints did not file responses to the Court's April 26, 2022 order. Distributor Defendants McKesson Corporation, Amerisource Bergen Drug Corporation, and Cardinal Health 110, LLC filed a Supplemental brief challenging diversity jurisdiction of local Defendants. All other Defendants named in the afore mentioned Amended Complaints have consented to remand by failing to timely lodge an objection.[6] As will be addressed, Plaintiffs' contend Distributor Defendants' entire brief is frivolous in light of the outdated, incorrect facts stated therein.

## II.   REVIEW STANDARDS

Removal of an action filed in state court is appropriate under 42 U.S.C. § 1441 if the suit could have been filed in federal court. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). Federal courts must construe removal jurisdiction strictly due to significant federalism concerns. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100 (1941); *Eastman v. Marine Mech. Cor*p., 438 F.3d 544, 549-50 (6th Cir. 2006) (Removal statutes construed strictly and all doubts resolved in favor of remand). If federal jurisdiction is doubtful, a remand to state court is necessary. *Maryland*

---

[6] Per Judge Polster's April 26, 2022 Order, those Defendants who had not filed a response were required to file a joint response within 14 days. Failure to do so was to be construed as consent to amend. No other Defendants in this case filed a response.

*Stadium Authority v. Ellerbe Becket Inc*., 407 F.3d 255, 260 (4th Cir. 2005). "Doubts regarding federal jurisdiction should be resolved in favor of remand." *Eastman v. Marine Mech. Corp*., 438 F.3d 544, 550 (6th Cir. 2006) (citing *Brown v. Francis*, 75 F.3d 860, 864064 (3d Cir. 1995). Here, because Defendant Distributors moved for removal, they have the burden of establishing federal jurisdiction. *Conrad v. Robinson, 871 F.2d 612, 614 (6th Cir. 1989); Carson v. Dunham*, 121 U.S. 421, 425-26 (1887); *Maryland Stadium Authority v. Ellerbe Becket Inc*., 407 F.3d 255, 260 (4th Cir. 2005), citing *Mulcahey v. Columbia Organic Chemicals Co., Inc*., 29 F.3d 148, 151 (4th Cir. 1994).

This Court must "resolve all doubts about the propriety of removal in favor of retained state jurisdiction." *Hartley v. CSX Transp. Inc.*, 187 F.3d 422, 425 (4th Cir. 1999). Further, *Hartley* instructs where a defendant seeks to remove a case for fraudulent joinder, the "party alleging fraudulent joinder bears a heavy burden – it must show that the plaintiff cannot establish a claim even after resolving all issues of law and fact in the plaintiff's favor. *Hartley*, *supra*, 187. This standard is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Mayes v. Rapoport*, 198 F.3d 457, 464 (4th Cir. 1999).

Distributor Defendants raise two related concepts that are often mistaken for one another: fraudulent joinder and fraudulent misjoinder. "Fraudulent joinder" of defendants, for the purpose of creating non-diversity among parties, examines viability of claims against a defendant; "fraudulent misjoinder," meanwhile, analyzes joinder of claims rather than viability. *Geffen v. General Elec. Co.* 575 F.Supp. 2d 865 (N.D. Ohio, 2008). Fraudulent joinder occurs where a plaintiff names a party for which no colorable cause of action exists. *Walker v. Philip Morris USA, Inc*., 443 F. App'x 946, 951 (6th Cir. 2011).

Fraudulent joinder of non-diverse defendants does not defeat removal on diversity grounds. *Alexander v. Electronic Data Sys. Corp*., 13 F.3d 940, 949 (6th Cir. 1994).  To find fraudulent joinder, this Court must find no reasonable basis in law or fact supports plaintiffs' claims.  *See Hall v. OrthoMidwest, Inc*., 541 F.Supp.3d 802 (N.D. Ohio, 2021); *Alexander v. Electronic Data Sys. Corp*., 13 F.3d 940, 949 (6th Cir. 1994). The removing party bears the burden of proving fraudulent joinder. *Alexander*, *supra*, 13 F.3d at 949. Rules and analysis of the doctrine of fraudulent joinder are not settled among circuits.

District courts in the Sixth Circuit, like the Fourth Circuit where this case began, have proposed various frameworks for applying fraudulent misjoinder. *See generally*, *Geffen v. General Elec. Co.* 575 F.Supp. 2d 865, 870- 871 (N.D. Ohio, 2008) (describing how various federal district courts have reached divergent conclusions on the doctrine's applicability.) In *Geffen*, the court held "[c]onducting fraudulent misjoinder analysis in this case necessarily requires the Court to wade into a thorny thicket of unsettled law; disagreements exist as to numerous questions about the doctrine, and 'the last thing the federal courts need is more procedural complexity.'" *Geffen*, 575 F. Supp.2d at 871 (quoting *Osborn* v. Metro. Life Ins. Co., 341 F. Supp. 2d 1123, 1127). The court further summarized the doctrine as sometimes requiring egregious misjoinder or a degree of bad faith before it can be invoked and whether to apply state or federal joinder law. *Id.* "Instead, the better course of action is for the state court to rule on the propriety of joinder under the state's joinder law in the first instance. The state court is also then in a position to address a motion to sever the parties and claims for further proceedings." *Id*. citing *Osborne*, 341 F. Supp. 2d at 1127. The *Geffen* court then declined to apply the doctrine of fraudulent misjoinder. *Id.* at 872. Here, Plaintiffs agree and request that their cases be remanded to the WV MLP, which was specifically created to adjudicate opioid cases filed in West Virginia.

### III. PLAINTIFFS' AMENDED COMPLAINTS WERE FILED TIMELY, CONSISTENT WITH THIS COURT'S ORDER. DISTRIBUTOR DEFENDANTS' ARGUMENTS THAT THIS COURT NOT 'ACCEPT' THE AMENDED COMPLAINTS ARE MOOT AND FRIVOLOUS. DEFENDANTS FURTHER WAIVED THE ISSUE BY WAITING THREE YEARS TO OBJECT.

As a preliminary matter, Distributor Defendants object to this Court's consideration of Plaintiffs' Amended Complaints from March 15, 2019, where both the original and the Amended Complaints identify Defendant BOP and local individuals as nondiverse Defendants. Concerning diversity jurisdiction, the Amended Complaints add one additional category of persons: five salespeople from one of the newly added (diverse) Defendant Manufacturers. Defendants contend they are unduly burdened and prejudiced by the change.

By Order dated January 18, 2019, in the instant lawsuit, all Non-Track One and Motion Plaintiffs, a category to which Plaintiffs belong, were granted an extension until March 16, 2019 to amend their pleadings as of right for matters both relying on and beyond the ARCOS data. (ECF 1282, p. 2)[7]. Plaintiffs complied with the Court's ruling and amended all seven complaints on March 15, 2019, with one day to spare. Plaintiffs' Amended Complaints were parallel to one another in all claims and Defendants. Each complaint added Defendant opioid manufacturers – diverse parties – and certain local drug salespersons – nondiverse. Three years later, Defendant Complaints were untimely, done with no notice, nor authority: that Plaintiffs essentially dropped them from the sky with no notice. Distributor Defendants fail to cite any previous, timely, objection to the Amended Complaints, instead raising the issue here, some three years later, where they ask this Court to deny "leave" for Plaintiffs to file Amended Complaints. No leave was necessary per this Court's Order. *Id.* ECF 1282.

---

[7] *See* Doc# 1282 dated January 18, 2019 attached as Ex. 1.

Almost the entirety of Distributor Defendants' brief is based on arguments relating to the earlier, 2017 Complaint – one superseded by the properly filed 2019 Complaints – and the false assertion the Distributor Defendants have any grounds to challenge Amended Complaints based on Plaintiffs' not obtaining leave to amend. In light of this Court's order and Distributor Defendants' failure to raise this issue in a timely manner, Plaintiffs request this Court deny Distributor Defendants' request as one mooted by court order, an argument that was waived by delay, and one utterly frivolous.

Assuming arguendo there is even a scintilla of merit to Distributor Defendants' arguments regarding leave to amend, Plaintiffs state as follows. Whether a court should grant leave to amend pleadings falls within the purview of Federal Rule of Civil Procedure 15, which provides that after a responsive pleading, a party may amend its pleading with opposing party's written consent or with leave of the court. Fed.R.Civ.P.15(a)(2). It is well established that the court should "freely give leave when justice so requires." *Id.* Trial courts have discretion to permit amendment of a complaint. *Estes v. Ky. Util. Col,* 636 F.2d 1131, 1133 (6th Cir. 1980). Key factors the trial court will balance include undue "delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of amendment." *Gen. Elec. Co. v. Sargent & Lundy*, 916 F.2d 1119, 1130 (6th Cir. 1990) (quoting *Hageman v. Signal L.P. Gas, Inc*., 486 F.2d 479, 484 (6th Cir. 1973)).

By statute, this Court may deny joinder, permit joinder, or permit joinder and remand the action to the state court where a plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction. 28 U.S.C § 1447(e). (Note, however, Plaintiffs aver federal diversity subject matter never existed in the original complaint and object to the argument that

only the amended complaint destroys complete diversity by adding nondiverse salespersons as defendants). In *City of Cleveland v. Deutsche Bank Tr. Co.,* 571 F.Supp.2d 807 (N.D. Ohio 2008), the court suggested for guidance on 28 U.S.C. § 1447(e), courts review these factors:  1) the extent to which the amendment is to defeat jurisdiction, 2) whether the plaintiff has been dilatory in seeking amendment; 3) whether the plaintiff will suffer significant prejudice in the absence of amendment; and 4) equitable considerations.  *Deutsche Bank*, 571 F.Supp.2d at 823.  The first factor was given "paramount importance." *Id.* at 823-24 (citing *H. Lewis Cooper Co. v. Diageo N. Am., Inc.,* 370 F.Supp.2d 613 618 (E.D. Mich 2005).  Moreover, Distributor Defendants cite *Harper v. AutoAlliance Int'l, Inc.*, 392 F. 3d 195, 210 (6th Cir. 2004) for the premise that once this Court has jurisdiction over a case, Plaintiffs cannot divest it of jurisdiction by amending their complaint. The same case holds that subject matter is determined by examining the complaint as it existed at the time of removal. *Harper*, 392 F. 3d at 210.[8]

*Harper* illustrates the undue burden and prejudicial effect that weighs against leave to grant amendments to a complaint. In *Harper*, the complaint was removed on federal question jurisdiction.  Later, after the federal question causes of action – the sole reason for jurisdiction - were dismissed, Complainant amended the complaint without objection to remove all federal claims. The district court continued exercising supplemental jurisdiction over supplemental pendent state claims. After close of discovery, on the eve of the defendant's motion for summary judgment, the plaintiff suddenly asked the court to revisit its earlier decision on retaining federal jurisdiction.  The *Harper* plaintiff argued the amended complaint he filed six months prior –where he raised no federal questions - should have related back to the first pleading – and automatically

---

[8] There are exceptions to *Harper* requiring a court look only to the original complaint to consider removal. See *Hechter v. Nationwide Fire Ins. Co*., 2:14-CV-2720, 2015 WL 1757542 (S.D. Ohio April 14, 2015) (on its face, the plaintiff's complaint presented only state law claims, but federal question jurisdiction was found where the well-pleaded complaint rule allowed the court to consider the defendant's claim federal law preempted state law).

undone the court's prior supplemental jurisdiction. *Harper,* 392 F.3d at 13. *Harper* found that the "interests of judicial economy and fairness both favored the district court's retention of jurisdiction" of strictly supplemental claims. *Harper*, 392 F.3d at15 citing *Taylor*, 973 F.2d at 1288. In *Harper*, the Sixth Circuit looked at all the circumstances and found the trial court did not abuse its discretion. After eleven months of litigating: the parties in *Harper* had completed discovery, the plaintiff had not abandoned his federal claim until filing his amended complaint, the defendant's motions for summary judgment were ready for decision, and the trial court had made several substantive decisions – including on the initial motion to remand. In short, the trial court had already invested itself in litigation and was familiar with the facts of the case. *Harper*, 393 F.3d at 11.

Here, the contrast to *Harper* is stark. There has never been an initial ruling on remand for lack of jurisdiction. Plaintiffs have been waiting five years on their motions to remand. The parties have not conducted discovery, nor has the Court ruled on any dispositive motions. Discovery has not even begun. *Harper* chronicled abuse of the system by a plaintiff seeking to forestall a motion for summary judgment and re-litigate the issues in state court. In the instant matter, this motion to remand is the very *first* judicial review between these parties. Consistent with the goals of the MDL – judicial economy and streamlining discovery - Plaintiffs' motion for remand has been suspended as pending for five years. On creating the MDL, this Court issued a "moratorium on all filings" (ECF 4) on December 14, 2017, and later continued the "moratorium on all substantive filings" by order dated January 11, 2018 (ECF 70.) By further order dated February 16, 2018, "to avoid unnecessary motion practice during the pendency of moratorium" this Court deemed no party would waive any right to seek remand by filing to move for remand in the transferor court by agreeing not to oppose a Conditional Transfer Order. Parties could enter executed waivers of

service of process, but the moratorium forbade filing responsive pleadings. *See* Order, *In Re: National Prescription Opiate Litigation*, 1:17-MD-2804 (Feb. 16, 2018) (ECF 130). Only by order on April 26, 2022, did this Court lift the moratorium on remand motions, allowing the present matter to be considered. (ECF 4389).

Notably, Defendant Distributors contend Plaintiffs were dilatory for failing to amend complaints that were, in fact, filed timely. Incredibly, Distributor Defendants find no tardiness nor undo prejudice in their own three-year failure to object to the delayed filing – nor do Distributor Defendants give reason for such. Distributor Defendants had three years to not just object, but to study the claims raised and enjoyed ample time to prepare a brief that raised no new substantive issues to a complaint that, like other cases already remanded, already stated viable claims against the non-diverse BOP.

The suggestion that the amendment was done to evade jurisdiction is spurious, where, as here two similar lawsuits against West Virginia Board of Pharmacy (BOP) have been remanded for lack of federal diversity after removal challenges. One emergency motion for remand occurred before Plaintiffs filed their amended complaint, *Brooke Cty. v. Purdue Pharma, L.P.*, 5:18-cv-00009 (N.D. W.Va. February 23, 2018), ECF 23, and another was remanded after Plaintiffs amended, *A.D.A., as Next Friend of L.R.A. v. Johnson & Johnson*, 2022 WL 636423 (N.D. W Va. Feb 15, 2022). Both *L.R.A.* and *Brooke* were West Virginia opioid suits presided over by WV District Judge John Preston Bailey, when it was in the Northern District of West Virginia set for a remand hearing. In *L.R.A.*, the district court found the plaintiffs had pled enough facts to prove defendant WV BOP willfully declined to do its statutory duty to stop the opioid epidemic. A near identical twin to the claims and defendants in the instant suit, *Brooke*, too, named the non-diverse

BOP and pharmaceutical salespeople as defendants. The court denied diversity jurisdiction, finding no grounds for either fraudulent joinder or fraudulent misjoinder.

### IV. THE BASIS FOR DISTRIBUTOR DEFENDANTS' REMOVAL HAS BEEN MOOTED BY THE 2019 AMENDED COMPLAINT AS WELL AS PREVIOUS CASES, INCLUDING AN ORDER BY A WEST VIRGINIA STATE COURT, HOLDING THE BOP WAS NOT IMMUNE FROM IMMUNITY BASED ON THE SAME CLAIMS DISTRIBUTOR DEFENDANTS MAKE

Defendants contend the 2017 Complaint lacked true diversity subject matter jurisdiction because Plaintiffs could not state a claim for relief against non-diverse Defendants BOP and individual defendant doctors and pharmacists. As previously addressed, Plaintiffs' 2019 Amended Complaint was filed properly and timely. That Complaint adds additional non-diverse parties of drug salespersons who are properly joined as joint tortfeasors. Yet, even so, inclusion of the WV BOP is proper where a West Virginia state court has already held against the WV BOP in its bid for immunity from another parallel, opioid lawsuit. Quite simply, to succeed on fraudulent joinder, Distributor Defendants need to establish the BOP's immunity incorrect under color of law.

By order entered December 28, 2018 by the Honorable David W. Hummel, Jr. [9], Judge of the Circuit Court of Marshall County, West Virginia, the BOP failed to dismiss a complaint against it on the grounds of qualified immunity. The state court considered claims identical to those raised by Distributor Defendants: that it should enjoy qualified immunity due to discretionary or administrative actions and that the public duty doctrine, too, shielded it. *Brooke County v. Purdue Pharma, L.P.,* No. 17-C-248 (Marshall County, West Virginia, December 28, 2018). Due to such qualified immunity, the BOP asked the court to dismiss claims brought by plaintiffs in a parallel suit. The court's well-reasoned decision articulated that the BOP's liability was not based on

---

[9] *See* Judge Hummel's 12/28/18 Order attached as Ex. 2.

failure to make policy, but its own failure to abide by the clearly established laws and regulations it promulgated.   See *Id.* at ¶ 22. The same order held there was no qualified immunity for government officials whose conduct was fraudulent, malicious, willful, intentional, or otherwise oppressive.  *Id.* at ¶ 23. As will be addressed in this brief in Section VI, Distributor Defendants, too, specified conduct of the BOP that was far beyond the scope of negligence.  Plaintiffs' 2019 Complaint alleged in Count IV and IV that "All Defendants" were unjustly enriched and/or created a public nuisance by negligent, intentional, malicious, oppressive, illegal and unethical acts, omissions, and wrongdoing.

Distributor Defendants ask this Court to relitigate a state law decision in this forum instead of returning to the West Virginia District Court where, their arguments have already failed.  The *Brooke* order is on point and decisive.  Only three months prior, the West Virginia District Court ruled against their argument in deciding *L.R.A.* In the interim three months, Distributor Defendants have produced no new case law on which to base their argument. To prevail on fraudulent joinder, Distributor Defendants need to point to a well-settled precedent regarding the BOP's qualified immunity because they bear the burden of establishing no reasonable basis in law or fact supports Plaintiffs' claims. *OrthoMidwest,* 541. Fupp.3d 802*; Alexander*, 13 F.3d at 949. Because doubts about federal jurisdiction should be settled in favor of remand, Distributor Defendants' already failed arguments on state law arguments are not an appropriate basis for removal. If Distributor Defendants wish to advance the BOP's qualified immunity, they must bring forward decisive state law showing no divergence from their argument. Instead, all cases brought so far have been aligned with Plaintiffs' contention that the BOP has no qualified immunity. Because Distributor Defendants cannot defeat *all* non-diverse Defendants in the Complaint, they therefore cannot prevail on their objection to Plaintiffs' adding additional non-diverse Defendants.

## V.  FRAUDULENT MISJOINDER DOES NOT APPLY HERE WHERE PLAINTIFFS HAVE A CAUSE OF ACTION UNDER WEST VIRGINIA LAW AGAINST JOINT TORTFEASORS, INCLUDING THE BOP, DEFENDANT PURDUE SALESPERSONS.

Fraudulent misjoinder describes a plaintiff who seeks to defeat removal by mis-joining unrelated claims of diverse and non-diverse parties. There is no strong consensus among the circuits on the standard for application of fraudulent misjoinder. District courts in both the Fourth Circuit, where this action was first removed, and the Sixth Circuit have grappled with the issue, reaching divergent standards of applicability.

In the Fourth Circuit, the district court in another opioid lawsuit, *McDowell v. McKesson Corp.*, 1:17-cv-00946 (S.D. W.Va. July 3, 2017), considered the issue. Ultimately**,** the *McDowell* Order denied remand where fraudulent joinder and/or misjoinder were raised against Dr. Cofer, one of the non-diverse Defendants in the instant case. Unlike the present matter, the original *McDowell* complaint had raised federal question jurisdiction at the outset and had never included any *nondiverse* parties other than Dr. Cofer.[10]  Unlike the previous *McDowell* complaint, at the outset of the instant lawsuit, Plaintiffs' filed against the non-diverse BOP as a Defendant – and the BOP remains in the lawsuit. *McDowell* rejected outright fraud as necessity for finding fraudulent misjoinder. Defendant Distributors find *McDowell* persuasive. In so doing, however, they fail to address that *prior* to *McDowell,* the Southern District of West Virginia issued an order lifting a stay in an MDL case against a multinational drug company and remanded the case to state court after declining to find fraudulent joinder/misjoinder of local, non-diverse medical personnel sued under a different theory than the multinational company.  *See Smith v. Health Mgmt. Assoc. of W.*

---

[10] The McDowell complaint, too, was amended prior to the 2019 deadline. Its inclusion in the MDL will also be subject to a motion for remand.

*Virginia*, 2:06-cv-00619 (S.D. W. Va. July 28, 2017).  The *Smith* order was attached to Plaintiffs'

original brief and cited in great detail as the basis for Plaintiffs' decision to remand this case.

Most powerfully, the reasoning used by the *Smith* Court was adopted yet again in the

Northern District of West Virginia, more recently by another companion opioid case in *Brooke*

*County v. Purdue*, 18-CV-00009-JPB (N.D. W. Va. February 23, 2018), which found no fraudulent

misjoinder.  Put simply, contrary to Distributor Defendants' assertion, *McDowell* did not foreclose

a nearly identical plaintiff from a defendant's attempt at fraudulent misjoinder.  Post *McDowell*,

Plaintiffs in opioid-related lawsuits prevailed because courts have held state claims against joint

tortfeasors should be joined even where one action is for the negligence of a medical defendant,

and another is for public nuisance or negligence of a multinational drug distributor.

In *Brooke* discussed supra – a case identical in nearly every respect to Plaintiffs' – a West

Virginia municipality sued the BOP, local medical professionals, multinational drug

manufacturers, and local sales representatives of those manufacturers.  *Brooke* explicitly adopted

the test used in *McDowell* – quoting several pages verbatim, in block quotes, then used *McDowell*'s

standard to conclude - as in the instant case – that non-diverse Sales Representative Defendants of

Defendant opioid manufactures are not "nominal" and not "insulated from personal liability." The

court held that joinder of nondiverse sales representatives was met under the higher standard of

*McDowell* and was consistent with the Federal Rule of Civil Procedure 20, allowing liberal joinder.

Finally, because only one diverse party defeats diversity jurisdiction, the *Brooke* decision did not

address whether the BOP, a local defendant medical personnel, or Defendant Goodwin were

fraudulently joined or mis-joined. Instead, the *Brooke* court noted "[t]hat issue may be determined

by a Court with jurisdiction." *Brooke, at fn 5.*

VI.    **FRAUDULENT JOINDER DOES NOT APPLY TO THE BOP WHERE DEFENDANTS CAN SHOW NO CLEAR, ESTABLISHED PRECEDENT IN WEST VIRGINIA ON WHETHER QUALIFIED IMMUNITY OR THE PUBLIC DUTY DOCTRINE SHIELD THE BOP FROM EITHER NEGLIGENCE OR NUISANCE CLAIMS.**

Distributor Defendants' contend Plaintiffs cannot state a claim under West Virginia law for the WV BOP because: it is a state agency and as such, it has qualified immunity against an allegation of negligence when the BOP is using "regulatory discretion" to oversee licensing requirements for the pharmaceutical industry. Alternatively, Distributor Defendants' argue the WV BOP cannot be sued for negligence because the BOP owed no special duty to Plaintiffs' other than what it owed to the public, i.e., "the public duty doctrine."   As discussed, this Court must resolve disputes of facts and law in favor of Plaintiffs, the nonmoving party. Fraudulent joinder exists "[i]f the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled law of the state." *McCabe v. General Foods Corp., 811 F.2d 1336, 1339* (9th Cir. 1987).  However, if federal jurisdiction is doubtful, the case must be remanded. *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994).

 As earlier addressed in Section IV, Distributor Defendants' argument is an attempt to re-litigate a motion brought in West Virginia state court, by the BOP itself, in which it failed to dismiss another opioid lawsuit on the basis of its qualified immunity.  Every argument raised by Distributor Defendants was raised by the BOP in a suit nearly identical to the current one, yet the state court ruled against quasi-immunity. *Brooke County v.* Purdue, No. 17-C-248 (Dec. 28, 2018). In keeping with the high burden accorded a motion for fraudulent joinder, Defendants have the burden of proving the state claim is not cognizable.

Plaintiffs' refer to their original briefing on this matter where these points were argued in greater detail. The supplemental briefing cites case law arguing by association cases against

various state agencies that qualified immunity should be defeated because the BOP's governing regulations – those that determined licensing for controlled substance distribution – were not sufficient to show a causal relationship to the injury, were discretionary, or were not specific in governing how the WV BOP should evaluate the overall security system needs of a registrant under W. Va. Code S.R. § 14-2-5.1.1.  Plaintiffs assert both *Brooke* and *L.R.A.* have mooted these arguments. Both Courts cited the WV BOP's duty to determine effective controls against diversion as enough reason not to remove the case.

The *Brooke* order against the BOP acknowledged that even if the WV BOP duties were discretionary or administrative, qualified immunity did not apply. The *Brooke* order held liability was not based on failure to promulgate rules, but the BOP's failure to follow its own rules and regulations.  Instead of addressing that order, Defendants contend *Brooke* – a state court decision – was wrongly decided and argued by association. They compare the BOP to the Department of Health and Human Resources (DHHR), where in *Crouch v. Gillispie,* 240 W. Va. 629, 630 (2021), DHHR's duties on one specific investigation into one child were found to be discretionary.  To demonstrate its argument, however, the *Crouch* decision relied on a complete record amassed after close of discovery. The finding was not based on merely looking at the complaint or regulations. This is because, in accordance with arguments in Plaintiffs' initial briefing on remand, the allegation of qualified immunity is not dispositive without a full record of how the BOP transacts business. There are factual issues in dispute here, and in accordance with the high burden that Distributor Defendants must meet, any factual disputes must be seen in the light most favorable to Plaintiffs'. It is the same with the sole insurance certificate appended to Distributor Defendants' original briefing from the year 2016 – 2017 to show waiver of liability from the BOP.  Discovery, which has not yet transpired, will necessarily involve collecting the full record of insurance

documents, payments, and contracts from 2007 onward. The suggestion in Defendant Distributors brief that a public record search will show facts in their favor evidences the weakness of their position. There is, indeed, a factual issue in dispute on the matter. By virtue of the standard of review for remand, that dispute must be resolved by this Court in the light most favorable to Plaintiffs'.

The fact remains: two prior cases suing the BOP have been remanded to state court after removal actions claiming fraudulent joinder. *Brooke Cty. Comm'n v. Purdue Pharma*, L.P. 5:18-cv-00009 (N.D. W.Va. Jan 18, 2018); *A.D.A., As Next Friend of L.R.A., v. Johnson & Johnson*, 2022 WL 636423 (N.D. W Va. Feb 15, 2022). In *L.R.A.*, itself another West Virginia opioid suit, the district court, Judge John Preston Bailey presiding, held that the plaintiffs pleaded enough facts to prove that defendant BOP willfully declined to do its statutory duty to stop the flood of opioids into West Virginia. Further, the court found plaintiffs sufficiently alleged prescriptions written by high-volume prescribers and dispensing of opioids by unscrupulous pharmacies filling suspicious prescriptions, would not have occurred but for the tortious acts and omissions or failure to act by all of the defendants. *L.R.A.* at *5. Hence, the Court concluded defendant WV BOP was not fraudulently joined or mis-joined.

Distributor Defendants' contend qualified immunity applies because neither Plaintiffs' original Complaints[11] nor their Amended Complaints plead the BOP acted with anything other than negligence. That it failed to include the BOP acted fraudulently, maliciously or oppressively. Only a selective reading of the 2017 Complaints misses the allegation the BOP acted with other joint tortfeasors with something above mere negligence to create a public nuisance. True,

---

[11] Plaintiffs assert the Original 2017 Complaints are not relevant where, as here, they were amended properly and timely and have been superseded by the 2019 Amended Complaints. But to address all possible arguments, Plaintiffs address the issue, regardless.

negligence allegations are set out more prominently with a headline "Negligence" in Complaint ¶¶ 124 – 128, but at the outset, the 2017 Complaints avers *all* Defendants acted maliciously or recklessly.  All prior allegations were incorporated explicitly by reference in each Complaint. Some sections refer specifically to "Defendant BOP," while others refer specifically to "Distributor Defendants," and then some allegations apply collectively to *all* Defendants – including the Defendant BOP, by using the broader term "Defendants." In pertinent part those claims are as follows in the 2017 Complaint:

> "**The collective actions of Defendants** have caused and will cause . . .  substantial sums of public funds to deal with . . . the opioid epidemic that was fueled, and public nuisance that was created by, **Defendants' illegal, reckless, and malicious actions** in flooding the state with highly addictive prescription medications . . . . *Lincoln 2017* Compl. ¶ 11.

***

> "The BOP **knowingly** violated clearly established law [W. Va. Code R. § 15-2-4.2.1] by failing to investigate Defendant Distributors in order to determine whether they had provided effective controls against diversion." : *Lincoln* May 19, 2017 Compl. ¶ 104 (ECF – 1-1, Exhibit A in Lincoln, 2:17-cv-03366 (June 22, 2017).

***

> 105. At all times material to these allegations, the BOP was aware of, but opted to disregard its duties. Lincoln May 19 Compl. § 105.

***

> 128. The BOP **knowingly** violated clearly established law by failing to investigate Defendant Distributors in order to determine whether they had provided effective controls." *Lincoln 2017* Compl. ¶ 128.

***

> 168. [D]efendants have **negligently, intentionally, and/or unreasonably** interfered with the right of Lincoln County citizens to be from unwarranted injuries . . .

***

> 175. [D]efendants negligently, recklessly, maliciously, oppressively, and/or intentionally and acting with blind indifference to the facts, created and continue to propagate a public nuisance." ¶ 175.

20

Clearly, Plaintiffs' Complaints – both the original and the amended – aver the WV BOP acted with more than mere negligence in failing to stop the tidal wave of opioids. The 2019 Amended Complaint also avers the BOP acted beyond the scope of mere negligence:

Count V - Unjust Enrichment

All Defendants were all unjustly enriched by their **negligent, intentional, malicious, oppressive, illegal and unethical acts, omissions, and wrongdoing**. 279. All Defendants actions were **negligent, intentional, malicious, oppressive, illegal and unethical acts, omissions, and wrongdoing** have unjustly enriched these Defendants and are directly related to the damages, losses, and to the detriment of the Plaintiff. 280. All Defendants are liable to Plaintiff for all damages incurred as a result of Defendants **negligent, intentional, malicious, oppressive, illegal and unethical acts, omissions, and wrongdoing of all Defendants contained in this Complaint.**  *Emphasis added - Gilbert 2019* Compl. ¶¶ 272 – 282.

Count VI – Public Nuisance

As a direct and proximate result of the above-described conduct, Defendants **negligently, recklessly, maliciously, oppressively, and/or intentionally, and acting with blind indifference to the facts, created and continue to propagate a public nuisance**. More particularly, the public nuisance created by Defendants, injuriously, and in many areas pervasively, affects Gilbert, and endangers the public health and safety and inconveniences the residents of Gilbert.  *Emphasis added - Gilbert 2019* Compl. ¶¶ 283 – 304.

**RELIEF REQUESTED**

In summary, Plaintiffs' respectfully request this Honorable Court remand all seven Amended Complaints to their respective circuit courts within the State of West Virginia for transfer to the WV MLP – Opioid Litigation Civil Action No. 19-C-9000, where they will be included in the currently scheduled trials to determine statewide liability for the opioid crisis. Plaintiffs' ask this Court to find no diversity subject matter jurisdiction where both the WV BOP and five individual Purdue Defendants prevent diversity.  Moreover, Plaintiffs' request the Court

find that no claims show fraudulent misjoinder, where they are properly joined in accordance with

FRCP Rule 20.

Dated: May 24, 2022

Respectfully Submitted

/s/ *James D. Young*

James D. Young (***Pro Hac Vice***)
Florida Bar No. 567507
**MORGAN & MORGAN COMPLEX**
**LITIGATION GROUP**
76 S. Laura St., Suite 1100
Jacksonville, FL 32202
(904) 398-2722
Email:  jyoung@forthepeople.com

H. Truman Chafin (WV Bar No. 684)
Letitia N. Chafin (WV Bar No. 7207)
**THE CHAFIN LAW FIRM, PLLC**
P.O. Box 1799
Williamson, WV 25661
P Phone: 304-235-2221
Fax: 304-235-2777
Email: truman@,thechafinlawfirm.com
Email: tish@thechafinlawfirm.com

Mark E. Troy, Esq. (WV BAR NO. 6678)
**TROY LAW FIRM, PLLC**
222 Capitol Street, Suite 200A
Charleston, WV 25301
Phone 304-345-1122
Email: mark@troylawwv.com

Harry F. Bell, Jr., Esq. (WV BAR NO. 297)
**THE BELL LAW FIRM, PLLC**
P.O. Box 1723
30 Capitol St.
Charleston, WV 25326-1723
Phone: 304-345-1700
Email: hfbell@belllaw.com
***Attorneys for Plaintiffs***